(No. 32585.—

The People of the State of Illinois, Defendant in Error, *vs.* Encarnation Gonzalez, Plaintiff in Error.

*Opinion filed January 22, 1953—Rehearing denied March 24, 1953.*

Donald R. Hellyer, of Chicago, for plaintiff in error.

Latham Castle, Attorney General, and John Gutknecht, State's Attorney, of Chicago, (John T. Gallagher, Rudolph L. Janega, Arthur F. Manning, William J. McGah, Jr., John T. Cogan, and George J. Cotsirilos, all of Chicago, of counsel,) for the People.

Mr. Justice Bristow delivered the opinion of the court:

This case comes here on writ of error from the criminal court of Cook County, wherein the plaintiff in error, Encarnation Gonzalez, hereinafter called defendant, was convicted of rape and received a sentence of five years in the penitentiary on a trial by the court without a jury.

Defendant, age twenty, was jointly indicted and tried with four others, Augustine Gonzalez, Robert Gonzalez,

George Roble, age eighteen, and Joseph Luna, age eighteen, and they were likewise found guilty of rape and sentenced to the penitentiary for terms of thirty-five, thirty, fifteen and two years, respectively.

Bail was originally set for each of them at $5000 but subsequently was reduced to $1000 with the consent of the State's Attorney. Each of the defendants made bond.

The prosecutrix was Mrs. Amelia Almaraz who lived at 2126 South Halsted Street, Chicago. She was a mother forty-five years of age, having a son eleven years old, and was employed as a salad maid in a Chicago hospital. Her husband, from whom she did not regard herself as legally separated, was employed in St. Louis, Missouri. On the day in question, Friday, March 9, 1952, Mrs. Almaraz finished her day's work at 5 P.M., went directly home, took a bath, and embarked alone upon a program of recreation and amusement. First she went to the Star and Garter Theatre, then to the Casablanca Tavern, and then, at 11:30 P.M., she arrived at the Balboa Tavern which is located on Halsted Street near Roosevelt Road. Mrs. Almaraz had visited these same places many times before and was well known in the Balboa Tavern. According to her testimony, the prosecutrix had been in the last named resort for about an hour and had consumed two glasses of beer when she was approached by Joseph Luna and was invited by him to dance. Joseph testified their dancing stopped after about fifteen minutes when she told him that she was too drunk to dance anymore. Luna, Robles, Robert Gonzalez and Amelia went out of the tavern at about the same time and again met on the northwest corner of Halsted and Roosevelt Road near a news stand in front of a tavern which was still open and well lighted. It was about 1:00 A.M., and prosecutrix was contemplating a ride home on a streetcar going south. While she was waiting there, she was kidding and talking with the above-named three persons and listening to their various advances. Robert Gonzalez

testified that she said that two of them could accompany her to her room but not any more than that number. During the discussion on the street corner up came a two-seated Buick automobile driven by Encarnation Gonzalez and in it was Augustine Gonzalez. It is interesting to note that none of the three Gonzalez boys are related, and it is also important to observe that not one of these boys had a criminal record of any kind.

From this point on, there is considerable conflict in the testimony. Amelia testified that she was forced into the back seat of the Buick which was then driven into an alley and parked in the rear of 1056 West Harrison Street; that two of the boys beat and struck her many times, tore her panties, held their hands over her mouth and eyes; that it was first Augustine Gonzalez who forcibly raped her; that Robert Gonzalez repeated the assault; and that George Robles was in the back seat with her preparing for his turn when the police approached and arrested her, Robles and Encarnation Gonzalez and took them to the police station. The other three fled but reported to the police station the next morning voluntarily, at which time their statements were taken.

The police officers testified that Mrs. Almaraz was crying, that her hair and clothing were disheveled; that there was a "little mark and swelling on her right jaw about the size of a quarter;" and that when they asked her what was going on, she said, "They are hurting me." She indicated more of a desire to go home rather than become involved in the prosecution of anyone.

At the trial all five of the boys testified in their own behalf. Without detailing their testimony in full, it is a fair interpretation of it to say that they all denied doing anything that remotely resembled rape. It is unnecessary to recount all of the unpleasant details of their testimony, and suffice it to say we are impressed by the frankness and the reasonableness of their story. They each denied

striking the prosecutrix or using force of any character, and testified they heard no protest or outcry from her of any sort. The two boys who did have intercourse with her said it was accomplished without any resistance.

The testimony of the defendant looms much more convincing when we consider the character of the prosecutrix. She left her husband and son behind her, traveled from tavern to tavern drinking intoxicating liquors and dancing with strangers and teenagers. All of this she admits. We think the trial court was exceedingly charitable when he, in pronouncing the harsh sentences on the boys, referred to Amelia, on several occasions, as a "lady" and as a "girl." The inference is justifiable that Amelia was not averse to meeting someone interested in the field of sex.

The weakness of the State's case is emphasized by the lack of corroboration of the prosecutrix on important details. She testified that when Augustine Gonzalez made the assault upon her in the back seat of the Buick car that he tore her panties. Augustine testified that they were removed without contest. The garment was not produced at the trial. The policeman who testified on behalf of the State said nothing about finding any torn garment. Amelia also testified that she was struck forcibly about the face and on the chest and on the arm and was otherwise brutally handled. The police testified that there was a lump on her face the size of a quarter. She went to the hospital on the night in question, visited her family physician immediately, but there was no testimony from the hospital, her doctor, or her husband to lend support to her claim that she was a victim of brutality, or that the lump on her face was of recent origin.

It is reasonable to assume that these defendants would not have made a vicious assault upon a woman on a street in Chicago if there were many people nearby who could be called to her rescue. In rebuttal, two of the defendants testified that the tavern on the northwest corner of Halsted

and Roosevelt Road in front of which they met was open, that the newsboy was selling papers on that corner, and that nine or ten people were standing there waiting for a southbound streetcar. Mrs. Almaraz was the only one called on behalf of the prosecution to testify to the contrary. Neither the policemen who were patrolling that neighborhood, nor the owner of the tavern, nor the newsboy were called to corroborate her.

The defendant herein, Encarnation Gonzalez, was twenty years old, living with his parents at 1112 South Morgan Street, Chicago. He attended Dante Grammar School and McKinley High School three years, worked five years for the Illinois Central as a mail handler, and was in the Marine Corps for a few months but received a medical discharge because of impaired vision. He was driving his brother's car on the occasion in question, and when they were all loaded into his automobile, he drove to the alley, as he said, "To attend to the call of nature," and was in front of the car doing so and smoking a cigarette when "the parade" into the rear seat of his vehicle started. He testified that he "imagined" what was going on; that he did not intend to have intercourse with the woman; that he did not know her, had never seen her before, did not touch her, heard no outcries or remonstrances from her; and that he did not know or had not seen any of the boys before except Augustine Gonzalez who was riding with him. The above testimony is substantially uncontradicted.

The prosecution argues that the policemen contributed much support to their position in their testimony that Mrs. Almaraz was crying and was very nervous when they approached her in the automobile. It does not seem unfair to say that her tears and emotional disturbance were provoked by the shame, surprise and shock of being arrested rather than the pain produced by the assault. The record exhibits a rather striking incongruity. The State's Attorney that questioned the five boys upon arrest assured them

that their involvement was not very serious. Consistent with this attitude, the State's Attorney recommended that the bond be reduced from $5000 to $1000. However, at the trial, the State's Attorney recommended a thirty-five-year sentence to the penitentiary. We are of the opinion that the judgment entered herein is not sustained by the law or evidence. The judgment entered against this defendant by the trial court represents a miscarriage of justice and is reversed.

*Judgment reversed.*